# Mountain City Market House and Hall Association *versus* Kearns & Co.

1. In the counties to which the Act of February 17th 1858 (P. L. 29, Purd. Dig. 1029) applies, a mechanic's lien can be filed against a market house and public hall, erected by a lessee on his leasehold.

2. An unincorporated association by oral agreement leased a tract of land for more than three years, entered into possession, erected valuable improvements thereon, but postponed the formal execution of a written lease until a charter of incorporation could be obtained. Prior to its incorporation and the formal execution of the written lease, work was done

in and materials furnished for the erection of said improvements, for which a mechanic's lien was subsequently filed under the Act of February 17th 1858, against the lot, and the incorporated company, which had formally assumed the debts of the unincorporated association. *Held*,

(1) That under the statute of frauds the interest of the unincorporated association was that of a lessee at will.

(2) That the Act of 1858, applies to leased estates, whether oral or written.

(3) That the lien attached to the improvements and the interest of the unincorporated association in the lease at will, and was not impaired by the act of incorporation or the committing of the verbal lease to writing.

3. In setting out the situation and peculiarities of a building in a mechanic's claim, such matters of description as are adequate to identify the building are sufficient.

April 20th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Schuylkill county:* Of January Term 1883, No. 346.

Scire facias sur mechanics' lien filed by P. Kearns & Co., against the Mountain City Hall and Market House Association, lessee of a tract of land in the borough of Pottsville, Schuylkill county. Pleas, nil debet, no lien, payment, with leave, etc.

On the trial, before PERSHING, P. J., the facts appeared to be as follows: In January 1876 a number of citizens of Pottsville subscribed to stock for the purpose of organizing the Mountain City Market House and Hall Association. They severally agreed in writing to pay on or before April 1st 1876, 40 per cent. of their stock subscriptions, for the purpose of obtaining a lease of land from the Mountain City Banking Company; the agreement further recited that application was about to be made by said subscribers for a charter of incorporation. On February 24th 1876, the stockholders met, organized and elected directors. The latter on March 16th 1876 accepted and ratified a draft of a proposed lease of the tract of land in question from the Mountain City Banking Company, and authorized the president of the association to formally execute it. Prior to such execution, however, possession of the ground had been taken in the early part of 1876 and in April of that year ground was broken for the purpose of erecting a building thereon, to be used for the purposes of a market house and a public hall. Between November 25th 1876 and January 22nd 1877, the work was done and materials furnished by P. Kearns & Co. for the erection of said building, for which this lien was filed. The Association was incorporated on February 21st 1877 and in the following May, the lease under which possession had been taken and the building erected, was formally executed in writing, the rent to run from September 1876. On April 3rd 1877, the

stockholders accepted the charter, and the corporation by resolution formally assumed the debts incurred by the unincorporated association in the erection of said building.

On July 5th 1877, Kearn & Co. filed this claim for $398.76 "against the leasehold interest of the said Mountain City Hall and Market House Association, a body corporate in law, in all that certain two-story brick building, situate on the southeast corner of Norwegian and Second streets, in the borough of Pottsville, the lower or ground floor of which is used as "a market house, and the second floor as a hall or audience room, bounded on the southwest by said Second street, on the northwest by said Norwegian street, on the northeast by the Mountain City Bank building, which it adjoins, and on the southeast by property of Roland Whitfield, and now partly occupied by Roland Whitfield as a feed store. The said lot or piece of ground upon which the said building is erected is now owned by the Mountain City Banking Company, and is by it leased to the said the Mountain City Hall and Market House Association ; and the said lot or piece of ground and curtilage appurtenant to said building."

The defendant presented the following points :

1. That the liens in these cases having been filed against the corporation defendant as a corporation, and the interest of the defendant as a corporation in the premises, there can be no recovery in these cases under the undisputed evidence that at the time the contract was made and work done there was no corporation in existence, and no lease executed or agreed upon till subsequent to the work being done. Refused.

2. That the liens in these cases are defective in imposing a lien on the lot belonging to the defendant's lessor, and are not restricted to the property and interests specified in the Act of Assembly providing for lien, and there can be no recovery in these cases. Refused.

3. That under all the evidence in these cases the verdict of the jury should be in favor of the defendant. Refused.

The court instructed the jury, inter alia, as follows : "It will be for you to determine whether the amount of your verdict in this case shall be for $398.76, with interest upon it, which would appear by the lien as coming to plaintiff, or whether for the sum of $303.76 which according to the minutes in evidence appears was due him at a settlement made in August, the month following the filing of his lien."

Verdict for the plaintiffs for $388.05 and judgment thereon. The defendant thereupon took this writ of error, assigning for error the refusal of his points and the instruction of the court quoted above.

[Mountain City, &c. Association *v.* Kearns.]

*James 'Ryon* and *Geo. R. Kaercher* (with them *C. Little* and *Isaac M. Price*), for the plaintiff in error.—The Act of February 17th 1858 (Purd. 1029) contemplates a leased estate, upon the land of others, and to support a lien there must exist a leasehold estate at the time the contract for the work or material furnished was made. The foundation of a mechanics' lien is a contract. There must be an owner having an estate, which will be bound by the lien. Under the Act of February 17th 1858, there must be an owner of a leased estate, or tenant holding a leasehold estate as the owner. If there is no leased estate, there can be no lien. This owner and leasehold estate must exist at the time the contract is made for the work and material. The evidence shows that P. Kearns & Co. had completed their work before any lease was made to the Hall Association. An agreement to lease, even in writing, vests no legal estate, in the premises in the would-be tenant. It is a mere personal agreement, and only gives the right to the would-be tenant to maintain an action for damages : Weaver *v.* Wood, 9 Barr 220 ; Jackson & Gross Landlord & Tenant page 20 § 23 ; Dame's Appeal, 12 P. F. S. 417. The liens here simply describe a two-story brick building erected on a lot bounded on two sides by streets, and on two other sides by adjoining owners. In no sense does the description meet the requirements of any Act of Assembly relating to mechanics' liens. No length or depth is given to the building. The liens also are general, not confined to the particular improvement, &c. erected by these claimants, but including also " the lot or piece of ground." The levari facias would sell the whole building with the ground on which it stood, and if it would only sell the lease, if there was a lease, the objection is fatal : Ely *v.* Wren, 9 Norris 148 ; St. Clair Coal Co. *v.* Martz, 25 P. F. S. 384. The Act of February 17th 1858, does not authorize liens against buildings such as this in question ; it relates only to " improvements " put up by tenants of coal lease estates : St. Clair Coal Co. *v.* Martz, supra ; Ely *v.* Wren supra ; Schenley's Appeal, 20 P. F. Smith 101 ; Esterly's Appeal, 4 P. F. Smith 192.

*James B. Reilly*, for the defendant in error cited : Thomas *v.* Smith, 6 Wr. 68 ; Reed *v.* Clement, 3 W. N. C. 53 ; Bell's Gap R. R. Co. *v.* Christy, 79 Pa. St. R. 54, 59 ; Preston *v.* Liverpool, &c. R. W. Co., 7 Eng. Law & Eq. 124 ; Edwards *v.* Grand Junction R. R. Co., 1 Mylne & Craig 650 ; Abbott's Digest of the Law of Corporations I. p. 220, §§ 114, 115, 127 ; Lyon *v.* McGuffey, 4 Barr 126 ; Gaule *v.* Bilyeau, 1 Casey, 521.

Mr. Justice TRUNKEY delivered the opinion of the court, May 7th 1883.

[Mountain City, &c. Association v. Kearns.]

Soon after the enactment of the Act of February 17th 1858, relating to mechanics' liens in the counties of Luzerne and Schuylkill, it was decided that the Act applies generally to tenants of leased estates, and cannot be restricted to tenants of coal leases, and that an ice-house erected, not as an out-house or appurtenant to a man's residence, but as an independent and separate structure for purposes of commerce, is an improvement subject to a lien : also that the interest of the tenant in the ground necessary for enjoyment of the ice-house is an object against which the lien may be entered : Thomas v. Smith, 42 Pa. St. 68.

In Schenley's Appeal, 70 Id. 98, it was ruled that the word "improvement" in the Act "was not intended to authorize the creation of liens upon the ordinary houses or dwellings of tenants;" and some remarks were made in the opinion in effect that the Act only applied to colliery leases. But when the Act again came to be considered, it was said that it was not a question in Schenley's Appeal, whether the Act was confined to colliery leases, and therefore, it was not decided; and once more it was ruled that the Act does not "embrace private dwellings erected by tenants independently of their works :" Schmidt & Co. v. Armstrong, 72 Id. 355.

The latest case touching the construction of the word "improvement" and the kind of leased estates in the statute, is Reed v. Clement, 3 W. N. C. 53, where it was held that a blacksmith and wagon-maker's shop, built on leased ground, is an improvement within the meaning of the Act of 1858.

While there is some clashing in the dicta respecting the meaning of the statute, there is none in the points decided. Twice it has been decided that the Act does not apply to dwelling-houses ; and twice, that it is not limited to colliery leases, but applies to tenants of leased estates on lands of others who erect buildings for business purposes. Therefore, it must be taken as judicially determined, that in the counties where the Act of 1858 is in force, a building to be used for a market house and hall, erected on a leasehold, is subject to a mechanics' lien, to like extent as buildings are when erected on freeholds, under the Act of June 16th 1836 ; and that the lien of the debt shall extend to the interest of the tenant of the leased estate in the ground covered by such building and so much other ground adjacent and belonging thereto, as may be necessary for the ordinary and useful purposes of such building.

Objection is made that the building is not sufficiently described and that a sale under this lien would pass the fee, and therefore the claim is fatally defective. Admittedly, the description of the lot is good to fix the locality of the building, and to that is added that the lot " is now owned by the Moun-

[Mountain City, &c. Association *v.* Kearns.]

tain City Banking Company, and is by it leased to the said The Mountain City Hall and Market House Association." The improvement is described as a " two-story brick building . . . the lower or ground floor of which is used as a market house and the second floor as a hall or audience room." Such matters of description as are adequate to identify the building are sufficient: Act June 16th 1836, § 12, III., P. L. 698. In this lien the leased estate is particularly described, and the building thereon erected is designated by matters amply sufficient for its identification. The claim is properly filed against the building, for the work and material entered into its construction as a whole. This improvement is unlike the case of the repairing or furnishing an engine, or pump, or screen, or patent improvement in hoisting and dumping coal, for these and the like are small and specific things, parts of extensive works. We think the lien is clearly against the interest of the lessee in the lot and properly restricted to the requirements of the statute.

The stockholders of the association signed an agreement to pay for the shares set opposite their respective names, forty per centum thereof, to be paid on or before April 1st 1876, for the purpose of accepting the offer of The Mountain City Banking Company to grant a lease as recited in said agreement; and their agreement also recited that application was about to be made for incorporating the Mountain City Market House and Hall Association. On February 24th 1876, the stockholders met, organized and elected directors. These directors at once elected officers, appointed committees, and on March 16th 1876, accepted and ratified the report of a draft of a lease agreed upon by the committee, and authorized the president to execute the lease. The lease was executed on May 7th 1877, for the lot, term, rent and purposes recited in the said agreement of the stockholders, and the rent to commence on September 1st 1876. But the directors had possession of the lot for more than a year before the lease was actually executed in writing, and in April 1876, began work on the ground preparatory to building. They advertised for proposals, awarded contracts in May and June 1876, and the building was nearly completed before the charter was obtained, which was on February 21st 1877. At a meeting of the stockholders on the 3d of April 1877, it was resolved that the charter of the corporation be accepted, and that the corporation assume all the debts contracted in the erection of the market house and hall, and will hold the stockholders clear of any responsibility or loss growing out of any suit that has or may be brought against any of them individually. Upon these uncontroverted facts, the defendant contends that there was no leased estate between November 25th 1876 and

[Rohrheimer v. Hofman.]

January 22d 1877, when the plaintiff did the work and furnished the materials, and, consequently, he had no lien.

The stockholders and directors contemplated incorporation and postponed execution of a written lease till after the attainment of that object. Its terms were evidently agreed upon, and the lessees entered into possession and made valuable improvements. They were not trespassers—they were tenants at will, and, strictly, held a leased estate. The Act of 1858 applies to every leased estate, whether the lease be oral or written. Under the facts, the plaintiff's claim is within the statute. The lien was upon the improvement, and the interest of the unincorporated association in the lot, under the lease at will; and the Act of incorporation did not destroy the lien. It remained upon the property notwithstanding its transfer to a corporation. The tenancy at will resulted from an oral lease for a longer period than three years, and the parties having put their lease in writing, the rights of every interested person are as secure as if it had been in writing from its beginning. It matters not that it was within the power of either party to have ended the lease at any time before the writing was executed.

None of the assignments of error is sustained.

Judgment affirmed.